**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON SCHOLDER, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> EBRO NORTH AMERICA and NEW WORLD PASTA CO., INC., <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff, Jason Scholder ("Plaintiff" or "Scholder"), a resident of New York, individually and on behalf of other similarly situated individuals, by and through his counsel, hereby files this Class Action Complaint for equitable relief and damages, against Defendant, Ebro North America, and its subsidiary, New World Pasta Company, Inc. (hereinafter, "Ebro"), and alleges the following based upon information, belief, and the investigation of his counsel:

1.      Ebro aggressively advertises and promotes wheat products, including, but not limited to, Ronzoni Healthy Harvest Thin Spaghetti, Ronzoni Healthy Harvest Linguine and Ronzoni Healthy Harvest Lasagna (hereinafter, "Ronzoni")[1] as "all natural", "100% all natural", "100% whole grain" and "made from a single ingredient, 100% whole wheat." These claims are false, deceptive, and misleading. Ronzoni is not "all natural" or "100% all natural," but instead contains the chemical glyphosate, a potent herbicide that last year was declared a probable human carcinogen by the cancer research arm of the World Health Organization. Glyphosate makes its way into Ronzoni not simply because it is used as an agricultural weed killer, but because it is sprayed on the

---

[1] Discovery may demonstrate that additional Ebro products are within the scope of this Complaint.

wheat as a drying agent shortly before harvest.

2. There is nothing unlawful about Ebro's growing and processing methods. What is unlawful is Ebro's claim that Ronzoni is something that it is not in order to capitalize on growing consumer demand for healthful, natural products.

3. Plaintiff brings this deceptive advertising case on behalf of a class of consumers who purchased Ronzoni in New York, and seeks relief including refunds to purchasers for the falsely advertised products and a court-ordered corrective advertising campaign to inform the public of the true nature of Ebro's carcinogen-contaminated wheat.

## INTRODUCTION

4. This is a proposed Class Action Complaint against Ebro North America, and its subsidiary, New World Pasta Company, Inc. (hereinafter, "Ebro"), for injunctive relief and economic damages based on misrepresentations and omissions committed by Ebro regarding its Ronzoni Healthy Harvest Thin Spaghetti, Ronzoni Healthy Harvest Linguine and Ronzoni Healthy Harvest Lasagna products ("Ronzoni"), which Ebro falsely and deceptively labels and markets as "all natural", "100% all natural", "100% whole grain" and "made from a single ingredient, 100% whole wheat." *See,* **Exhibit 1**.

5. In fact, Ronzoni contains glyphosate, a potent and *unnatural* biocide.

6. Aware of the health risks and environmental damage caused by chemical-laden foods, especially packaged foods, consumers increasingly demand foods that are natural and whole, and that omit chemicals.

7. Ebro knows that consumers seek out and wish to purchase whole, natural foods that do not contain chemicals, and that consumers will pay more for foods that they believe to be natural than they will pay for foods that they do not believe to be natural.

8. To capture this growing market, Ebro labels Ronzoni as "all natural", "100% all natural", "100% whole grain" and "made from a single ingredient, 100% whole wheat."

9. No reasonable consumer, seeing these representations, would expect Ronzoni to contain anything unnatural.

CLASS ACTION COMPLAINT

10.     Ronzoni, despite its labels, does contain something unnatural, namely, glyphosate.

11.     Glyphosate is not "Natural" or "100% Natural." Glyphosate is a synthetic biocide and probable human carcinogen, with additional health dangers rapidly becoming known.

12.     Glyphosate is "legal" in connection to food products, insofar as the law does not preclude the use of glyphosate in treating and harvesting crops. Ebro, however, did not and does not simply claim that Ronzoni is "legal," it claims that Ronzoni is "all natural", "100% all natural", "100% whole grain" and is "made from a single ingredient, 100% whole wheat." *See,* Exhibit 1.

13.     By deceiving consumers about the nature, quality, and/or ingredients of Ronzoni, Ebro is able to sell a greater volume of Ronzoni, to charge higher prices for Ronzoni, and to take away market share from competing products, thereby increasing its own sales and profits.

14.     Consumers lack the scientific knowledge necessary to determine whether Ronzoni in fact contains only "100% whole wheat," to know or to ascertain the true ingredients and quality of Ronzoni, or to assess the safety of ingesting glyphosate. Reasonable consumers must and do rely on Ebro to report honestly what Ronzoni contains, and whether the ingredients are in fact "all natural."

15.     Ebro conceals the presence of glyphosate in Ronzoni, fails to warn consumers of the presence of glyphosate, and fails to warn consumers about the harmful effects of ingesting glyphosate, which has been declared a probable human carcinogen by the cancer research arm of the World Health Organization.

16.     Ebro intended for consumers to rely on its representations, and hundreds of thousands of reasonable consumers did in fact so rely. As a result of its false and misleading labeling, failure to warn, and omissions of fact, Ebro was able to sell Ronzoni to hundreds of thousands of consumers throughout the United States and to realize sizeable profits.

17.     When a product purports to be "100% all natural," consumers not only are willing to pay more for the product, they expect it to be pesticide-free.

18.     Ebro's false and misleading representations, failure to warn, and omissions of fact violate New York General Business Law ("GBL") §§ 349-50 and common law.

19.     Plaintiff is not seeking damages for any personal injuries in this Complaint; rather, this case is based on Ebro's misrepresentations and omissions regarding Ronzoni purchased by Plaintiff and Class Members during the class period, defined below.[2]

20.     Accordingly, Plaintiff, Scholder, seeks relief equal to the aggregate retail purchase price paid by Plaintiff and Class Members during the Class Period, because the products are worthless and useless due to Ebro's misrepresentations regarding the true nature, quality, and ingredients of Ronzoni and its failure to warn consumers of the presence of glyphosate and the harmful effects of ingesting glyphosate.

21.     Plaintiff, Scholder, brings this action to stop Ebro's deceptive and misleading practices.

## JURISDICTION AND VENUE

22.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Scholder is a citizen of New York, and on information and belief, Defendant, Ebro, is a citizen of Pennsylvania. On information and belief, the amount in controversy exceeds $5,000,000.00.

---

[2] All potential claims for individual tort relief by Plaintiff and Putative Class Members are preserved and outside the scope of the damages sought in this litigation.

CLASS ACTION COMPLAINT

23.  This Court has personal jurisdiction over the parties in this case. Plaintiff, Scholder, is a citizen of New York and resident of Nassau County, New York. Ebro purposefully avails itself of the laws of New York to market Ronzoni to consumers nationwide, including consumers in New York, and distributes Ronzoni to numerous retailers throughout the United States, including New York.

24.  Venue is proper in this District under 28 U.S.C. § 1391(a). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature, quality, and/or ingredients of Ronzoni, occurred within this District.

## PARTIES

25.  At all times mentioned herein, Defendant, Ebro, was and is was and is a corporation that maintains its principal place of business and headquarters in Harrisburg, Pennsylvania. Ebro was, at all relevant times, engaged in commercial transactions throughout the United States and the State of New York, including this judicial District.

26.  Ebro manufactures and/or causes the manufacture of wheat products, and markets and distributes the products in retail stores in New York and throughout the United States.

27.  At all times mentioned herein, Plaintiff, Scholder, was and is an individual consumer over the age of 18, a citizen of the State of New York, and a resident of the County of Nassau. During the class period, Plaintiff, Scholder, purchased Ronzoni on multiple occasions at an Associated Supermarket store located on Middle Neck Road in Great Neck, New York.

28.  In deciding to make his purchases, Plaintiff, Scholder, saw, relied upon, and reasonably believed Ebro's representations that Ronzoni is "all natural", "100% all natural", "100% whole grain" and is "made from a single ingredient, 100% whole wheat."

29.  Plaintiff, Scholder, was willing to pay more for Ronzoni because he expected it to be pesticide-free.

30.     Had Plaintiff, Scholder, known at the time that Ronzoni contains the unnatural biocide glyphosate, he would not have purchased or continued to purchase Ronzoni.

31.     Had Scholder been warned of the dangers of ingesting glyphosate, and of the presence of glyphosate in Ronzoni, he would not have purchased Ronzoni.

32.     If Ronzoni was reformulated such that Ebro's representations were truthful, i.e., such that Ronzoni was "all-natural," "100% all natural", "100% whole grain" and "made from a single ingredient, 100% whole wheat" and no glyphosate, Scholder would consider purchasing Ronzoni in the future.

## SUBSTANTIVE ALLEGATIONS

33.     American consumers increasingly and consciously seek out natural and healthful food products. Once a small niche market, healthful, natural foods are now sold by conventional retailers, and their sales continue to soar. The trend toward natural and healthful food products includes, for many consumers, a preference for whole grains over processed or otherwise refined grains.

34.     Consumers value natural foods, including whole grains, for myriad health, environmental, and political reasons, including avoiding chemicals and additives, attaining health and wellness, helping the environment, and financially supporting companies that share these values.

### A.     Ebro's "Natural" Brand Image

35.     Hoping to capture this growing market, Ebro markets Ronzoni as "all natural", "100% all natural", "100% whole grain" and "made from a single ingredient, 100% whole wheat." Ebro does not disclose the presence in Ronzoni of anything other than "100% whole grain" and "100% all natural" whole wheat.

36.     Ebro cultivates its image as a healthful, wholesome, impurity-free brand—the kind of company whose label claims can be trusted.

37. Ebro's Ronzoni label states that the product is "all natural" and "100% whole grain." *See,* Exhibit 1.

38. In addition, Ebro's website advises consumers that Ronzoni is "100% whole grain," "100% all natural" and is "made from a single ingredient, 100% whole wheat." *See,* https://www.ronzoni.com/en-us/products/categories/2093/Ronzoni®HealthyHarvest®.aspx (last visited October 27, 2016); *See also,* Exhibit 1.

39. Nowhere on its website does Ebro mention the presence of glyphosate in Ronzoni.

40. Nowhere on its website does Ebro warn of the health risks of ingesting glyphosate.

41. Nowhere on its website does Ebro explain the environmental risks presented by glyphosate.

**B.      Ronzoni: Presented as "100% all natural"**

42. Ebro prominently labels and promotes its Ronzoni products as "all natural", "100% all natural", "100% whole grain" and "made from a single ingredient, 100% whole wheat." These representation appears on the label of the product and on Ronzoni's website.

43. Upon information and belief, Ebro has profited enormously from its fraudulently marketed product and its carefully orchestrated label and image.

44. Representing that a product is "100% all natural" or "100% whole grain" is a statement of fact.

45. Failing to disclose that a product contains glyphosate, and failing to warn of the dangers of ingesting glyphosate, are omissions of relevant fact.

46. Consumers reasonably believe that a product labeled "100% all natural" or "100% whole grain" does not contain synthetic ingredients.

47. Consumers reasonably believe that a product labeled "100% all natural" or "100% whole grain" does not contain pesticides.

48.    In 2014, the Consumer Reports® National Research Center conducted a nationally representative phone survey to assess consumer opinion regarding food labeling. *See,* http://www.prnewswire.com/news-releases/consumer-reports-survey-majority-ofamericans-look-for-natural-label-when-shopping-believe-it-carries-benefits-despite-the-contrary-263259671.html (last visited October 27, 2016).

49.    Sixty-six percent of all respondents in the Consumer Reports survey said that a "natural" label on packaged and processed foods means that "no toxic pesticides were used." Eighty-six percent of respondents said that a "natural" label on packaged and processed foods should mean that "no toxic pesticides were used." See *Id.*

50.    Consumers reasonably believe that a product labeled "all natural" or "100% natural" or "100% whole wheat" does not contain anything other than natural wheat.

51.    Ebro knows and intends that when consumers see the product labels promising the product is "all natural," "100% all natural," or "100% whole grain," consumers will understand that to mean that, at the very least, the product does not contain synthetic ingredients or harmful chemicals.

52.    Consumers reasonably expect that if a product contains a harmful substance, the presence of that substance will be disclosed, and they will be warned of the dangers associated with the substance.

## C.    Glyphosate: The Unnatural Hidden Substance

53.    Ebro's representations that Ronzoni is "100% all natural" and "100% whole wheat" are false. In fact, quantitative testing reveals that Ronzoni contains glyphosate.

54.    Ronzoni thus is not "100% all natural" or "100% whole grain," and does not contain only "100% whole wheat," and labeling it as such is misleading and deceptive.

55.    Ebro has a duty to disclose the presence of glyphosate and to warn of the dangers associated with glyphosate.

56.     On information and belief, glyphosate is, by volume, the world's most widely produced herbicide.

57.     Glyphosate was invented by the agrochemical and agricultural biotechnology corporation, Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup, after DDT was banned.[3]

58.     By the late 1990s, use of Roundup had surged as a result of Monsanto's strategy of genetically engineering seeds to grow food crops that could tolerate high doses of the herbicide. The introduction of these genetically engineered seeds enabled farmers more easily to control weeds on their crops.[4]

59.     Monsanto also encouraged farmers to use Roundup as a desiccant to dry out their crops in order to harvest them faster. Today, glyphosate is routinely sprayed directly on a host of non-genetically modified crops, such as wheat.[5] On information and belief, this use of glyphosate is not for any health or environmental purpose, and stems solely from a desire to increase profit margins through higher crop yield.

60.     Between 1996 and 2011, herbicide use in the United States *increased* by 527 million pounds, despite Monsanto's claims that genetically modified crops would *reduce* pesticide and herbicide use.[6]

---

[3] *See* https://www.organicconsumers.org/news/monsantos-roundup-enough-make-you-sick (last visited October 27, 2016).

[4] *See id.*

[5] *See id.*

[6] *See id.*

CLASS ACTION COMPLAINT

61.    In 2015, the International Agency for Research on Cancer (IARC), a research arm of the World Health Organization, declared glyphosate a category 2A "probable" human carcinogen. A summary of the study underlying this declaration was published in *The Lancet Oncology*, Vol. 16, No. 5 (May 2015).[7] The IARC study noted such carcinogenic risk factors as DNA damage to human cells resulting from exposure to glyphosate. *See id.* Glyphosate has been previously found to be a suspected human endocrine disruptor, with estrogenic effects even at extremely low concentrations.[8]

62.    In November 2015, the European Food Safety Agency published conclusions suggesting that the combined use of glyphosate with other chemicals posed greater potential health risks than when glyphosate is used alone. In light of those conclusions, in April 2016, following a review of products containing glyphosate and tallow amine, France's health and safety agency announced its intention to ban weed-killers that combine the two chemicals.[9]

63.    Glyphosate, as a biocide, functions by disrupting the shikimate pathway. [10] Although humans themselves do not have a shikimate pathway, the shikimate pathway is present in bacteria, including bacteria that inhabit the human gut and are essential to proper immune functioning. Glyphosate thus is suspected to disrupt human immune function as well.

64.    Studies examining low doses of glyphosate-based herbicides at levels that are generally considered "safe" for humans show that these compounds can nevertheless cause liver and kidney damage.[11]

---

[7] Available at http://www.thelancet.com/journals/lanonc/article/PIIS1470-2045%2815%2970134-8/abstract (last visited October 27, 2016)

[8] *See* Thongprakaisang, S. *et al.*, "Glyphosate induces human breast cancer cells growth via estrogen receptors," 59 *Food & Chem. Toxicol.* 129 (June 2013), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/23756170 (last visited September 22, 2016); *see also, e.g.*, Gasnier, C. *et al.*, "Glyphosate-based herbicides are toxic and endocrine disruptors in human cell lines," 262(3) *Toxicology* 184 (Aug. 21, 2009), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/19539684 (last visited October 27, 2016).

[9] *See* "France to Ban Some Glyphosate Weedkillers Amid Health Concerns," Reuters, Apr. 8, 2016, available at http://www.reuters.com/article/us-france-glyphosate-idUSKCN0X512S (last visited October 27, 2016).

CLASS ACTION COMPLAINT

65. Glyphosate is derived from the amino acid, glycine. To create glyphosate, one of the hydrogen atoms in glycine is artificially replaced with a phosphonomethyl group.

66. Glyphosate is not "natural."

67. Glyphosate is neither "all natural", "100% natural" nor present in "100% whole wheat."

68. Glyphosate is a dangerous substance, the presence and dangers of which should be disclosed.

**D.    Ebro's Misleading Labeling and Omissions**

69. Ebro's conduct in labeling Ronzoni "100% all natural" and "100% whole wheat" deceived and/or was likely to deceive the public. Consumers were deceived into believing that the listed ingredients were all the ingredients, and that the product was "100% all natural" and "100% whole wheat," and that nothing in Ronzoni was not "natural." Instead, Ronzoni contains glyphosate, an *un*natural biocide and probable human carcinogen, with myriad other potential health effects.

70. Consumers cannot discover the true nature of Ronzoni from reading the label. Consumers cannot discover the true nature of Ronzoni even by visiting its website, which makes no mention of glyphosate. Discovery of the true nature of the ingredients requires knowledge of chemistry and access to laboratory testing that is not available to the average reasonable consumer.

---

[10] *See, e.g.*, Heike, H. & N. Amrhein, "The Site of the Inhibition of the Shikimate Pathway by Glyphosate," *Plant Physiol.* 66:823 (1980), *available at* http://www.plantphysiol.org/content/66/5/823.full.pdf (last visited October 27, 2016); *see also* http://www.glyphosate.eu/glyphosate-mechanism-action (last visited October 27, 2016).

[11] Myers, J. et al, "Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement," *Environ. Health* 2016 15:19, available at https://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0117-0. *See also* Benedetti A.L., "The effects of sub-chronic exposure of Wistar rats to the herbicide Glyphosate-Biocarb, *Toxicol. Lett.* 2004;153(2):227–232, available athttp://www.ncbi.nlm.nih.gov/pubmed/15451553 (last visited October 27, 2016); Larsen K. et al, "Effects of Sublethal Exposure to a Glyphosate-Based Herbicide Formulation on Metabolic Activities of Different Xenobiotic- Metabolizing Enzymes in Rats," *Int. J. Toxicol.* 2014, available at http://www.ncbi.nlm.nih.gov/pubmed/24985121 (last visited October 27, 2016); Mesnage R. et al, "Transcriptome profile analysis reflects rat liver and kidney damage following chronic ultra-low dose Roundup exposure," *Environ. Health* 2015 14:70, available at http://www.ncbi. nlm.nih.gov/pmc/articles/PMC4549093/.

CLASS ACTION COMPLAINT

71.     Ebro deceptively and misleadingly conceals material facts about Ronzoni, namely, that Ronzoni is not "100% all natural," and that Ronzoni is not what a reasonable consumer would consider "100% all natural," because in fact it contains glyphosate.

72.     Ebro fails to warn consumers of the dangers of consuming glyphosate.

73.     Plaintiff and the members of the Class are not at fault for failing to discover Ebro's wrongs earlier, and had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice.

74.     The production process Ebro uses for Ronzoni is known only to Ebro and its suppliers. Ebro has not disclosed such information to Plaintiff or the Class members. Quantitative testing reveals the presence of glyphosate in Ronzoni, but only Ebro knows the methods by which it is processed, or what would account for the presence of glyphosate in Ronzoni. Ebro's concealment tolls the applicable statute of limitations.

75.     To this day, Ebro continues to conceal and suppress the true nature, identity, source, and method of production of Ronzoni.

**E.      Ebro's Knowledge That Its Representations Were False**

76.     Ebro holds itself out to the public as a trusted expert in the processing of wheat.

77.     Ebro knew what representations it made on the labels of Ronzoni and on its website. It also knew how the wheat was processed and that it was likely to contain glyphosate, an unnatural and dangerous herbicide.

78.     Ebro thus knew all the facts demonstrating that Ronzoni was mislabeled and falsely advertised, and that it had a duty to disclose the presence of glyphosate and to warn consumers about the dangers associated with glyphosate.

**F.      Ebros Intention That Consumers Rely on Its Misrepresentations**

79.     Ebro made the false, deceptive, and misleading representations and omissions intending for Plaintiff and the Class members to rely upon these representations and omissions in purchasing Ronzoni.

80.    In making the false, misleading, and deceptive representations and omissions at issue, Ebro knew and intended that consumers would purchase Ronzoni when consumers would otherwise purchase a competing product.

81.    Consumers are not only willing to pay more for a product that purports to be "all natural" or "100% natural," they expect that product to be pesticide-free.

82.    In making the false, misleading, and deceptive representations and omissions at issue, Ebro also knew and intended that consumers would pay more for "all natural" or "100% natural" wheat that is free of unnatural agents than they would pay for wheat that is not "all natural" or "100% natural," furthering Ebro's private interest of increasing sales of its products and decreasing the sales of the all-natural and/or glyphosate-free products that are truthfully marketed by its competitors.

83.    Ebro knows that consumers prefer "all natural" and "100% natural" foods, and foods that do not contain dangerous or potentially dangerous chemicals. Ebro knows that consumers will pay more for "all natural" or "100% natural" foods or would not purchase the foods at all unless they were "all natural" and/or "100% natural" and/or free from unnatural and potentially dangerous chemicals.

84.    Similarly, independent surveys confirm that consumers will purchase more "natural" products than conventional products, and will pay more for "natural" products.

**G.    Consumers' Reasonable Reliance on Ebro's Misrepresentations**

85.    Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing food.

86.    When Plaintiff, Scholder, and the Class members purchased Ronzoni, they saw the false, misleading, and deceptive representations detailed above, and did not receive disclosure of the presence of glyphosate or any warning of the dangers associated with glyphosate, as detailed above.

87.     These misrepresentations and omissions were uniform and were communicated to Plaintiff, Scholder, and every other member of the Class at every point of purchase and consumption.

88.     Plaintiff, Scholder, and the Class members were among the intended recipients of Ebro's deceptive representations and omissions.

89.     Plaintiff, Scholder, and the Class members reasonably relied to their detriment on Ebro's misleading representations and omissions.

90.     Ebro's false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiff, Scholder, the Class members, reasonable consumers, and the general public.

91.     Ebro's misleading affirmative statements further obscured what it failed to disclose, and the warnings it failed to give. Thus, reliance upon Ebro's misleading and deceptive representations and omissions may be presumed.

92.     Ebro made the deceptive representations and omissions with the intent to induce Plaintiff, Scholder, and the Class members to purchase Ronzoni. Plaintiff, Scholder's, and the Class members' reliance upon such representations and omissions may be presumed.

93.     Ebro's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Thus, Plaintiff, Scholder's, and the Class members' reliance upon such representations and omissions may be presumed as a matter of law; the representations and omissions were material; and a nexus exists between Ebro's conduct, on the one hand, and Plaintiff, Scholder's, and the Class members' decisions to purchase Ronzoni at a certain price, on the other hand.

## H.    Ebro's Conduct and Plaintiff's and the Class Members' Injury

94.    As an immediate, direct, and proximate result of Ebro's false, misleading, and deceptive representations and omissions, Ebro injured Plaintiff, Scholder, and the Class members in that they:

a.    paid a sum of money for a product that was falsely represented;

b.    paid a sum of money for a product containing glyphosate, of which they received no warning;

c.    paid more for a product that was falsely represented than they would have paid had the product not been falsely represented;

d.    were deprived the benefit of the bargain because the Ronzoni they purchased was different from what Ebro warranted;

e.    were deprived the benefit of the bargain because the Ronzoni they purchased had less value than what was represented;

f.    did not receive a product that measured up to their expectations as created by Ebro;

g.    ingested (or caused their children to ingest) a substance that was other than what was represented;

h.    ingested (or caused their children to ingest) a substance they did not expect or consent to;

i.    ingested (or caused their children to ingest) a product that included an unnatural substance;

j.    without their knowing consent, ingested (or caused their children to ingest) a biocide that is harmful to their health or their children's health;

k.    without their knowing consent, ingested (or caused their children to ingest) a substance that is, contains, or is produced with a known or suspected toxin, carcinogen, or hazardous substance;

l.    without their knowing consent, ingested (or caused their children to ingest) a substance that poses health or environmental risks;

m.    without their knowing consent, ingested (or caused their children to ingest) a substance that is otherwise harmful to the environment and/or the farmers and other workers who utilize or process such substance;

n.    ingested (or caused their children to ingest) a substance that was of a lower quality than what Ebro promised;

o.    were denied the benefit of knowing what they ingested (or caused their children to ingest);

CLASS ACTION COMPLAINT

p.     were caused unwittingly to support an industry that contributes to environmental, ecological, or health damage;

q.     were denied the benefit of supporting an industry that sells natural products and contributes to environmental sustainability; and/or

r.     were denied the benefit of the beneficial properties of the "all-natural" products promised.

95.    Had Ebro not made the false, misleading, and deceptive representations and omissions, and had Ebro not failed to warn of the presence of glyphosate and dangers associated with glyphosate, Plaintiff, Scholder, and the Class members would not have been injured as listed above. Accordingly, Plaintiff, Scholder, and the Class members have suffered "injury in fact" as a result of Ebro's wrongful conduct.

96.    Plaintiff, Scholder, and the Class members all paid money for Ronzoni, but did not obtain the full value of the advertised products due to Ebro's misrepresentations and omissions. Plaintiff, Scholder, and the Class members purchased, purchased more of, or paid more for, Ronzoni than they would have had they known the truth about Ronzoni. Accordingly, Plaintiff, Scholder, and the Class members have suffered "injury in fact" and lost money or property as a result of Ebro's wrongful conduct.

## I.    Ebro's Benefit from Its Misleading Representations and Omissions

97.    Ebro labels and advertises its Ronzoni products in large font as "all natural" and has profited handsomely as a result.

98.    As the intended, direct, and proximate result of Ebro's false, misleading, and deceptive representations and omissions, Ebro has been unjustly enriched through more sales of Ronzoni and higher profits at the expense of Plaintiff, Scholder, and the Class members. As a direct and proximate result of its deception, Ebro also unfairly obtained other benefits, including the higher value associated with a "natural" brand, redirecting sales to it and away from its competitors, and increased sales of its other products.

99.   Plaintiff, Scholder, and all other similarly situated consumers, did not bargain for products that contain unnatural ingredients in exchange for their payment of the purchase price.

100.  Ebro has profited by failing to warn consumers of the presence of glyphosate in Ronzoni or of the health effects of consuming glyphosate.

101.  Upon information and belief, Ebro has failed to remedy the problem with Ronzoni, thus causing future harm to consumers. Plaintiff, Scholder, Class Members, and future purchasers in the consuming public, are at risk of real, immediate, and continuing harm if Ronzoni continues to be sold as is, and without adequate warning of the presence of glyphosate and of the health effects of ingesting glyphosate.

102.  Plaintiff, Scholder, would continue to purchase Ronzoni again in the future if it were reformulated so that it did not contain glyphosate.

103.  Ebro has failed to provide adequate relief to Plaintiff, Scholder, or Class Members as of the date of filing this Complaint.

104.  Plaintiff, Scholder, contends that Ronzoni was sold pursuant to unfair and unconscionable trade practices because the sale of Ronzoni offends public policy and is immoral, unethical, oppressive, unscrupulous, and caused substantial economic injuries to Plaintiff, Scholder, and Class Members.

105.  Reasonable consumers do not expect products advertised as "100% all natural" and "all natural" to contain unnatural ingredients such as glyphosate. Defendants' statements and other representations convey a series of express and implied claims and/or omissions which Defendants know are material to the reasonable consumer in making a purchasing decision, and which Defendants intended for consumers to rely upon when choosing to purchase Ronzoni.

106.  Defendants misrepresented the nature, quality, and/or ingredients of Ronzoni, and/or failed to adequately disclose the health risks of ingesting the glyphosate contained in Ronzoni, which was and is false, misleading, and/or likely to deceive reasonable consumers. Reasonable consumers expect the presence of such ingredients to be disclosed so that they can make informed purchasing decisions.

107. Therefore, Ronzoni is valueless, and not worth the purchase price that Plaintiff, Scholder, and Class Members paid for it, and/or is not what Plaintiff and Class Members reasonably intended to receive.

108. Accordingly, Plaintiff, Scholder, seeks, individually and on behalf of all other similarly situated purchasers of Ronzoni during the Class Period, injunctive relief, and actual economic damages equaling the aggregate purchase price paid for Ronzoni by Plaintiff, Scholder, and Class Members during the Class Period.

109. Plaintiff, Scholder, also seeks declaratory relief in the form of an order declaring Ebro's conduct to be unlawful, as well as injunctive and equitable relief putting an end to Ebro's misleading and unfair business practices, including clear and full disclosure of the presence of glyphosate in Ronzoni and of the health effects of ingesting glyphosate and/or a reformulation of Ronzoni so that it no longer contains glyphosate.

## CLASS ALLEGATIONS

110. Plaintiff, Scholder, re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

111. This action is maintainable as a class action under Rules 23(b)(2) and (3) of the Federal Rules of Civil Procedure.

112. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff, Scholder, brings this action and seeks certification of the claims and certain issues in this action on behalf of a Class of individuals defined as:

All persons who purchased Ronzoni (as defined herein) from a retail location within the United States from the beginning of any applicable limitations period through the date of class certification (the "National Class Period").

113. Additionally, Plaintiff, Scholder, brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other similarly situated New York residents (the "New York Sub-Class"), defined as follows:

All persons who purchased Ronzoni (as defined herein) from a retail location within the State of New York from the beginning of any applicable limitations period through the date of class certification (the "New York Class Period").

114. Excluded from the Class and the New York Sub-Class are (1) Defendants, any entity or division in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns, and successors; and (2) the judge to whom this case is assigned and the judge's staff.

115. Plaintiff, Scholder, brings the Class and the New York Sub-Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

116. Plaintiff, Scholder, reserves the right to amend the Class definitions if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

117. All members of the Class and New York Sub-Class were and are similarly affected by the deceptive advertising of Ronzoni, and the relief sought herein is for the benefit of Plaintiff and members of the Class and New York Sub-Class.

## A.    Numerosity

118. At this time, Plaintiff, Scholder, does not know the exact number of the Class and New York Sub-Class members. Based on the annual sales and popularity of Ronzoni, it is readily apparent that the number of consumers in the Class and New York Sub-Class is so large as to make joinder impracticable, if not impossible. Class and New York Sub-Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

## B.    Common Questions of Law and Fact Predominate

119. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and New York Sub-Class that predominate over questions that may affect individual Class and New York Sub-Class members include:

(a)     Whether Ebro's practices and representations related to the marketing, labeling and sales of Ronzoni were unfair, deceptive, fraudulent, and/or unlawful in any respect, thereby violating New York law;

(b)     whether Ebro had a duty to disclose the presence of glyphosate in Ronzoni;

(c)     whether Ebro had a duty to warn about the dangers associated with glyphosate;

(d)     Whether Ebro failed to warn Plaintiff and Class and New York Sub-Class Members of the presence of glyphosate in Ronzoni and/or of the health effects of ingesting glyphosate in violation of New York law with its practices and representations related to the marketing, labeling, and sale of Ronzoni;

(e)     whether Ebro breached a warranty created through the labeling and marketing of Ronzoni;

(f)     Whether Ebro's conduct as set forth above economically injured Plaintiff and New York Sub-Class Members; and

(g)     Whether Plaintiff and New York Sub-Class Members are entitled to injunctive relief.

## C.     Typicality

120.  Plaintiff, Scholder's, claims are typical of those of the Class and New York Sub-Class, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class and New York Sub-Class is common to the Class and New York Sub-Class members. Plaintiff, Scholder, like all members of the Class and New York Sub-Class, relied on Defendants' false and misleading representations and purchased Ronzoni, or paid more for Ronzoni than Plaintiff, Scholder, would have paid if the products had been properly labeled, and sustained injury from Defendants' wrongful conduct. Further, there are no defenses available to Defendants that are unique to Plaintiff.

CLASS ACTION COMPLAINT

**D.    Adequacy**

121.  Plaintiff, Scholder, will fairly and adequately protect the interests of the Class and New York Sub-Class. Plaintiff is an adequate representative of the Class and New York Sub-Class because his interests do not conflict with the interests of the Class and New York Sub-Class members he seeks to represent, and he has retained counsel competent and experienced in both consumer protection and class action litigation. Plaintiff, Scholder, and his counsel will fairly and adequately protect the interests of the members of the Class and New York Sub-Class. Undersigned counsel has represented consumers in a variety of actions where they have sought to protect consumers from fraudulent and deceptive practices.

**E.    Predominance and Superiority of Class Action**

122.  The prerequisites to maintaining a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) are met because questions of law and fact common to each Class and New York Sub-Class Member predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

123.  Individual joinder of the Class and New York Sub-Class Members is not practicable, and questions of law and fact common to the Class and New York Sub-Class predominate over any questions affecting only individual Class and New York Sub-Class Members. Each Class and New York Sub-Class Member has been damaged and is entitled to recovery as a result of the violations alleged herein.

124.  Moreover, because the damages suffered by individual members of the Class and New York Sub-Class may be relatively small, the expense and burden of individual litigation would make it difficult or impossible for individual Class and New York Sub-Class Members to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action. Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.

125. Plaintiff, Scholder, is unaware of any difficulties in managing this case that should preclude class action.

## F.    Declaratory and Injunctive Relief

126. Certification also is appropriate under Rule 23(b)(2) because Defendants acted, or refused to act, on grounds generally applicable to the Class and New York Sub-Class, thereby making appropriate the injunctive relief sought on behalf of the Class and New York Sub-Class. Further, given the large number of consumers of Ronzoni, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

## CAUSES OF ACTION
## COUNT I

### (Violation of New York General Business Law § 349: Mislabeling)
### On Behalf of the Class and New York Sub-Class

127. The acts of Ebro, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

128. Ebro has labeled its Ronzoni products as "100% all natural" and "100% whole grain," has indicated that Ronzoni's ingredients are limited to "100% whole wheat," and has otherwise presented an image and marketing materials suggesting that the product contains nothing other than "100% whole wheat," when in fact the products contain glyphosate, an unnatural biocide.

129. Ebro has violated, and continues to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Ebro's violation of § 349, Plaintiff, Scholder, and other members of the Class and New York Sub-Class have suffered damages in an amount to be determined at trial.

130. Pursuant to New York General Business Law § 349, Plaintiff, Scholder, seeks an order of this Court that includes, but is not limited to, enjoining Ebro from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

131. Plaintiff, Scholder, and the other members of the Class and New York Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

132. The unfair and deceptive acts and practices of Ebro, as described above, present a serious threat to Plaintiff, Scholder, and the other members of the Class and New York Sub-Class.

THEREFORE, Plaintiff, Scholder, prays for relief as set forth below.

## COUNT II

### (Violation of the New York General Business Law § 349: Failure to Warn) On Behalf of the Class and New York Sub-Class

133. The acts of Ebro, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

134. Ebro has indicated that its Ronzoni products are "100% all natural" and contains only "100% whole wheat," but has failed to warn that Ronzoni in fact contains glyphosate, and has failed to warn consumers of the dangers associated with glyphosate.

135. Ebro has violated, and continues to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Ebro's violation of § 349, Plaintiff, Scholder, and other members of the Class and New York Sub-Class have suffered damages in an amount to be determined at trial.

136. Pursuant to New York General Business Law § 349, Plaintiff, Scholder, seeks an order of this Court that includes, but is not limited to, enjoining Ebro from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law.

137. Plaintiff, Scholder, and the other members of the Class and New York Sub-Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

138. The unfair and deceptive acts and practices of Ebro, as described above, present a serious threat to Plaintiff, Scholder, and the other members of the Class and New York Sub- Class.

THEREFORE, Plaintiff, Scholder, prays for relief as set forth below.

## COUNT III

### (Violation of the New York General Business Law § 350)
### On Behalf of the Class and New York Sub-Class

139. The acts of Ebro, as described above, and each of them, constitute unlawful, deceptive, and fraudulent business acts and practices.

140. New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

141. GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

142. Plaintiff and the members of the Class and New York Sub-Class are consumers who purchased Ronzoni in New York.

143. As sellers of goods to the consuming public, Ebro is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

144. Ebro's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Ebro's advertising fails to reveal material facts with respect to Ronzoni, as described above, constitute false advertising in violation of the New York General Business Law.

145. Ebro's false advertising was knowing and intentional.

146. Ebro's actions led to direct, foreseeable, and proximate injury to Plaintiff, Scholder, and the Class and New York Sub-Class.

CLASS ACTION COMPLAINT

147. As a consequence of Ebro's deceptive marketing scheme, Plaintiff, Scholder, and the other members of the Class and New York Sub-Class suffered an ascertainable loss, insofar as they would not have purchased Ronzoni had the truth been known, or would have purchased Ronzoni on different terms, and as a result of Ebro's conduct, they received a product of less value than what they paid for.

148. By reason of the foregoing, Ebro is liable to Plaintiff, Scholder, and the other members of the Class and New York Sub-Class for actual damages or five hundred dollars ($500) for each sale of Ronzoni (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

149. Plaintiff, Scholder, and the other members of the Class and New York Sub-Class further seek to enjoin the false advertising described above.

150. Absent injunctive relief, Ebro will continue to deceptively market Ronzoni.

THEREFORE, Plaintiff, Scholder, prays for relief as set forth below.

## COUNT IV

### (Based on Breach of Express Warranty)
### On Behalf of the Class and New York Sub-Class

151. Ebro provided Plaintiff, Scholder, and other members of the Class and New York Sub-Class with written express warranties including, but not limited to, warranties that Ronzoni is "100% all natural."

152. These affirmations of fact or promises by Ebro relate to the goods and became part of the basis of the bargain.

153. Plaintiff, Scholder, and members of the Class and New York Sub-Class purchased Ronzoni believing it to conform to the express warranties.

154. Ebro breached these warranties. This breach resulted in damages to Plaintiff, Scholder, and other members of the Class and New York Sub-Class, who bought Ronzoni but did not receive the goods as warranted.

155.  As a proximate result of the breach of warranties by Ebro, Plaintiff, Scholder, and the other members of the Class and New York Sub-Class did not receive goods as warranted. Plaintiff, Scholder, and the members of the Class and New York Sub-Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiff and members of the Class and New York Sub-Class did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff, Scholder, and the Class and New York Sub-Class members known the true facts, they would not have purchased Ronzoni, or would have purchased Ronzoni on different terms.

THEREFORE, Plaintiff, Scholder, prays for relief as set forth below.

## COUNT V

### (Unjust Enrichment)
### On Behalf of the Class and New York Sub-Class

156.  As a result of Ebro's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of Ronzoni, Ebro was enriched at the expense of Plaintiff, Scholder, and the other members of the Class and New York Sub-Class through the payment of the purchase price, or for the payment of a price higher than otherwise would have been paid, for Ronzoni.

157.  As a result of Ebro's failure to warn about the presence of glyphosate and about the dangers associated with glyphosate, Ebro was enriched at the expense of Plaintiff, Scholder, and the other members of the Class and New York Sub-Class through the payment of the purchase price, or for the payment of a price higher than otherwise would have been paid, for Ronzoni.

158.  Under the circumstances, it would be against equity and good conscience to permit Ebro to retain the ill-gotten benefits that it received from Plaintiff, Scholder, and the other members of the Class and New York Sub-Class, in light of the fact that the Ronzoni products purchased by Plaintiff, Scholder, and the other members of the Class and New York Sub-Class were not what Ebro purported them to be. Thus, it would be unjust or inequitable for Ebro to retain

the benefit without restitution to Plaintiff, Scholder, and the other members of the Class and New York Sub-Class for the monies paid to Ebro for Ronzoni.

THEREFORE, Plaintiff, Scholder, prays for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Scholder, demands judgment on behalf of himself and the proposed Class and New York Sub-Class providing such relief as follows:

A. Certification of the Class and New York Sub-Class proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff, Scholder, as representative of the Class and New York Sub-Class; and appointment of his undersigned counsel as counsel for the Class and New York Sub-Class;

B. A declaration that Ebro is financially responsible for notifying members of the Class and New York Sub-Class of the pendency of this suit;

C. An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Ebro as a result of the unfair, misleading, fraudulent, and unlawful conduct alleged herein;

D. Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

E. Injunctive relief pursuant to New York General Business Law § 349 and common law, enjoining Ebro's unlawful and deceptive acts;

F. Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 350;

G. Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

H. Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff, Scholder, hereby demands a trial by jury.

DATED: October 27, 2016

### GABRIELLI LEVITT LLP

Michael J. Gabrielli
michael@gabriellilaw.com
2426 Eastchester Rd., Ste. 103
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

*Attorneys for Plaintiff and Proposed Classes*

CLASS ACTION COMPLAINT