UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x
JASON SCHOLDER, on behalf of himself and all others
similarly situated,

        Plaintiff,

   -against-

RIVIANA FOODS INC.,

        Defendant.
----------------------------------------------------------------------------x

Order
16-cv-6002(ADS)(AKT)

APPEARANCES:

**Gabrielli Levitt LLP**
*Attorneys for the Plaintiff*
2426 Eastchester Road, Suite 103
Bronx, NY 10469
    By:   Michael J. Gabrielli, Esq., Of Counsel

**Kelley Drye & Warren LLP**
*Attorneys for the Defendant*
101 Park Avenue
New York, NY 10178
    By:   Jeffrey S. Jacobson, Esq.
            Glenn T. Graham, Esq., Of Counsel

**SPATT, District Judge:**

    This is one of several recent cases involving the legality of branding food products as "natural" when they contain or have been derived from allegedly unnatural – that is, synthetic or genetically-altered – sources. Specifically, in this putative class action, the Plaintiff Jason Scholder seeks to hold the Defendant Riviana Foods, Inc. liable under New York's consumer protection statute for labeling as "All Natural" and "100% Whole Grain" certain dry pasta products that allegedly contain trace amounts of glyphosate, an agricultural herbicide.

    Presently before the Court is a motion by the Defendant seeking to dismiss the complaint under FED. R. CIV. P. 12(b)(6) for failure to state a claim.

To some degree, the resolution of this and similar cases has been complicated by a lack of clear regulatory authority as to the meaning of the term "natural." Indeed, under the New York General Business Law ("GBL"), it is a complete defense to the Plaintiff's claims that the challenged conduct complies with the applicable rules and regulations promulgated by federal agencies. *See* GBL §§ 349(d), 350-d. However, as one court recently noted, the FDA has not adopted a formal regulatory definition of the term "natural." *See Forsher v. J.M. Smucker Co.*, No. 15-cv-7180, 2016 U.S. Dist. LEXIS 136035, at *4 (E.D.N.Y. Sept. 30, 2016).

Nevertheless, "in November 2015, the FDA announced that it would solicit comments from the public and the food industry concerning 'the use of the term 'natural' in the labeling of human food products . . ." *Id.* (quoting *Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments*, 80 Fed. Reg. 69905 (Nov. 12, 2015)).

Prior to this, the FDA had "a longstanding policy for the use of the term 'natural' on the labels of human food." *Id.* at 69906. Namely, it was the FDA's policy "not to restrict the use of the term 'natural' except for added color, synthetic substances, and flavors" and "to interpret the term 'natural' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." *Id.* (internal quotation marks and citation omitted). When this policy was established, "it was not intended to address food production methods, such as . . . the use of pesticides . . ." *Id.*

However, among other sources of interest on this subject, "some Federal courts, as a result of litigation between private parties, ha[d] requested administrative determinations from FDA regarding whether food products containing ingredients produced using genetic engineering or foods containing high fructose corn syrup may be labeled as 'natural.' " *Id.* at 69905, 69907 (noting that "three Federal district courts referred to [the FDA], for an administrative determination under

2

21 C.F.R. 10.25(c), the question of whether food products containing ingredients produced using bioengineering may be labeled as 'Natural,' 'All Natural,' and/or '100% Natural' ").

Thus, the FDA sought information and comments on a range of related questions, including whether, if the FDA were to revise its existing policy regarding the use of the term "natural," or engage in rulemaking to establish a regulatory definition for that term, (1) certain agricultural production practices, including the use of pesticides, should be a factor in the definition; (2) whether manufacturing processes, such as drying, should be a factor in the definition; and (3) whether consumers associate, confuse, or compare the term "natural" with the terms "healthy" and/or "organic." *See id.* at 69908-09.

The initial public comment period expired on February 10, 2016, and was subsequently extended to May 10, 2016. *See Use of the Term "Natural" in the Labeling of Human Food Products; Extension of Comment Period*, 80 Fed. Reg. 80718 (Dec. 28, 2015)). However, to date, it appears that the FDA's internal proceedings are still underway, and the agency has not taken any definitive steps with respect to defining or otherwise clarifying the permissible uses of the term "natural" in food labeling.

Thus, several courts confronted with similar issues have invoked the doctrine of primary jurisdiction to stay federal court cases arising from allegedly false or misleading claims on food packaging, pending the outcome of the FDA's most recent rulemaking process. *See Forsher v. J.M. Smucker Co.*, No. 15-cv-7180, 2016 U.S. Dist. LEXIS 152669, at *1-*2 (E.D.N.Y. Oct. 18, 2016) (staying, pending the outcome of the FDA's rulemaking process, an action challenging the use of the word "natural" to describe peanut butter products allegedly containing sugar manufactured from genetically modified organisms); *In re Kind LLC "Healthy & All Natural" Litig.*, 209 F. Supp. 689, 697 (S.D.N.Y. 2016) (staying, pending the outcome of the FDA's rulemaking process, an action challenging the use of the phrase "all natural" to describe snack foods allegedly containing synthetic, chemically synthesized, and highly processed ingredients"); *see also Kane v. Chobani, LLC*, 645 F. App'x

3

593, 594-95 (9th Cir. 2016) (remanding, with directions to stay pending the outcome of the FDA's rulemaking process, an action challenging the use of the phrase "all natural" to describe yogurt allegedly containing artificial colors and processed, unnatural substances); *Thornton v. Pinnacle Foods Grp., LLC*, No. 16-cv-158, 2016 U.S. Dist. LEXIS 136560, at *5 (E.D. Mo. Sept. 30, 2016) (staying, pending the outcome of the FDA's rulemaking process, an action challenging the use of the term "nothing artificial" to describe a muffin mix allegedly containing artificial and synthetic substances); *In re Hain Celestial Seasonings Prods. Consumer Litig.*, No. 13-cv-1757, 2016 U.S. Dist. LEXIS 153565, at *2-*3 (C.D. Ca. Aug. 8, 2016) (staying, pending the outcome of the FDA's rulemaking process, an action challenging the use of the term "100% natural" to describe tea allegedly containing unnatural substances); *Viggiano v. Johnson & Johnson*, No. 14-cv-7250, 2016 U.S. Dist. LEXIS 128425, at *5-*6 (C.D. Ca. June 21, 2016) (noting that "[s]ince the FDA commenced regulatory proceedings, district courts have followed the Ninth Circuit's lead [in *Kane, supra*] in applying the primary jurisdiction doctrine in these types of cases where the term 'natural' is at issue") (collecting cases); *In re General Mills, Inc.*, No. 12-cv-249, 2016 U.S. Dist. LEXIS 76723, at *2-*3 (D.N.J. June 13, 2016) (staying, pending the outcome of the FDA's rulemaking process, an action challenging the use of the phrase "made with all natural corn" to describe a cereal allegedly made from bioengineered corn); *George v. Blue Diamond Growers*, No. 15-cv-962, 2016 U.S. Dist. LEXIS 50193, at *7-*8 (E.D. Mo. Apr. 14, 2016) (staying, pending the outcome of the FDA's rulemaking process, an action challenging the use of the term "all natural" to describe almond milk allegedly containing artificial ingredients).

Having reviewed these authorities, this Court now joins the growing number of courts who have deferred to the FDA's expert and specialized knowledge on this subject, and await pertinent guidance on the permissible uses of the term "natural" in food labeling. In this regard, the Court finds Judge Pauley's application of the Second Circuit's test for invoking primary jurisdiction in the case of *In re Kind LLC "Healthy & All Natural" Litigation*, 209 F. Supp. at 694-97, to be persuasive.

There, the court noted that "[t]he doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. Thus the doctrine's essential aim is to allocate initial decision-making responsibility between courts and agencies to ensure that they do not work at cross-purposes." *Id.* at 693 (quoting *All Am. Tel. Co. v. AT&T, Inc.*, No. 07-cv-861, 2010 U.S. Dist. LEXIS 30065, at *1-*2 (S.D.N.Y. Jan. 19, 2010)).

Applying the Second Circuit's four-part test for determining whether to stay an action under the primary jurisdiction doctrine, Judge Pauley noted that, although judges and juries regularly address complex scientific issues without regulatory guidance, the balance of relevant factors nevertheless weighed in favor of deference to the FDA's rulemaking process.

In particular, the question of whether the presence of certain objectionable substances renders an "all natural" food label misleading is apparently within the scope of the FDA's discretion. Further, the court found that awaiting FDA guidance on this issue "would almost certainly help harmonize court rulings – an important consideration in view of the fact that 'Congress [did] not want to allow states to impose disclosure requirements of their own on packaged food products, most of which are sold nationwide' in order to avoid the need for '[m]anufacturers . . . to print 50 different labels.' " *Id.* at 696 (quoting *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011)). Finally, the court noted that, although a stay would inevitably delay the final resolution of the matter, this reality was outweighed by the fact that the FDA had already initiated proceedings; completed its notice and comment period; and appears "determined to address the 'all natural' labeling issue." *Id.*

The Court finds that this analysis applies with equal force to the facts of this case.

In arguing against a stay of these proceedings, the Plaintiff advances arguments that were expressly rejected in *In re Kind LLC "Healthy & All Natural" Litigation*. For example, the Plaintiff contends that the issue in this case is purely legal in nature, namely, whether the product packaging

5

is likely to mislead a reasonable consumer, and therefore, specialized and/or scientific knowledge is not needed. However, this argument was specifically considered in *In re Kind LLC "Healthy & All Natural" Litigation*, 209 F. Supp. at 695, and was found to be insufficient to warrant the relief sought.

Moreover, in the Court's view, the Plaintiff's attempt to argue that this case is "far less about science than it is about whether a label is misleading" is belied by the extensive technical discussion of glyphosate and accompanying citations to scientific evidence in the complaint, *see, e.g.*, Compl. ¶¶ 56-68, as well as the Plaintiff's supplemental submissions to the Court, which rely heavily on technical and scientific reports to bolster his opposition to the motion, *see* May 15, 2017 Letter, DE [29], and exhibits.

Further, the Plaintiff argues that, even if the FDA were to formally define the term "natural,' it may not conclusively resolve the issues in this case. However, this argument was also considered in *In re Kind LLC "Healthy & All Natural" Litigation*, 209 F. Supp. at 696, and it too was deemed insufficient to warrant the relief sought.

Finally, the Plaintiff argues that the FDA is unlikely to respond in a timely manner to a referral from this Court – essentially an argument that staying this proceeding would result in an undue delay. However, again, the Court in *In re Kind LLC "Healthy & All Natural" Litigation* noted that "the Second Circuit has cautioned against weighing [the possibility of a delay] too heavily in view of the fact that 'the Supreme Court has consistently held that there are only two purposes to consider in determining whether to apply the primary jurisdiction doctrine — uniformity and expertise,' and 'the Supreme Court has never identified judicial economy as a relevant factor.' " *Id.* at 696 (quoting *Tassy v. Brunswick Hosp Ctr., Inc.*, 296 F.3d 65, 68 n.2 (2d Cir. 2002)).

Thus, given that the FDA has already initiated proceedings; completed its notice and comment period; and appears "determined to address the 'all natural' labeling issue," the argument favoring a stay is "much stronger." *Id.*

Accordingly, without reaching the merits of the parties' substantive contentions under Rule 12(b)(6), the Court finds that a stay of this matter is justified pending the outcome of the FDA's rulemaking process regarding the permissible uses of the term "natural" in food labeling. The Defendant's motion to dismiss, DE [8], is therefore denied without prejudice and with leave to renew upon the present stay being lifted.

In the interim, the parties are directed to promptly apprise the Court of any material developments in the FDA's rulemaking process, and, in any event, to submit a joint status report on ECF no later than August 25, 2017.

Further, the Defendant's motion, DE [22], under Fed. R. Civ. P. 72, seeking to stay discovery pending the resolution of the pending motion to dismiss, is denied as moot. As is the Defendant's motion, DE [30], seeking to strike the Plaintiff's supplemental motion papers.

In that regard, the Court notes that the parties have, without authorization, burdened the record with extraneous written submissions and documentary evidence that is plainly improper to consider in connection with a Rule 12(b)(6) motion. Moreover, even some of the parties' authorized submissions apparently fail to adhere to the applicable rules regarding the form and content of motion papers. Without addressing these deficiencies in detail, the Court is advising the parties that future filings which do not strictly comply in all respects with the Court's Individual Motion Practices; the Local Civil Rules of the Eastern District of New York; and the Federal Rules of Civil Procedure will be disregarded without further notice to the filing party.

It is **SO ORDERED:**

Dated: Central Islip, New York
June 23, 2017      /s/ *Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge